## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

National Life Insurance Company,

Plaintiff,

vs.

Civil Action File No.
1:07-CV-0557-HTW

VICTORIA ALEMBIK-EISNER,
Trustee of the ABRAHAM HENRY
MADENFROST REVOCABLE
TRUST, *et. al.,*

Defendants.

### ANSWER AND COUNTERCLAIM OF
### VICTORIA ALEMBIK-EISNER, TRUSTEE OF THE
### ABRAHAM HENRY MADENFROST REVOCABLE TRUST

Victoria Alembik-Eisner, as Trustee of the Abraham Henry Madenfrost

Revocable Trust ("The Trust"), one of the defendants in interpleader and a plaintiff

in counterclaim, answers the Complaint and counterclaims as follows:

# ANSWER

The Trust, in answer to National Life's Complaint for interpleader, alleges:

1.

The Trust admits the allegations of Paragraph 1. of the Complaint.

2.

The Trust admits the allegations of Paragraph 2. of the Complaint.

3.

The Trust admits the allegations of Paragraph 3. of the Complaint.

4.

The Trust admits the allegations of Paragraph 4. of the Complaint, but cannot admit the accuracy of the name of the identified party. The Trust can only confirm that, on information and belief, the identified party is now known as "Doris Gicherman."

5.

The Trust admits the allegations of Paragraph 5. of the Complaint, but states that the correct spelling of the identified party is "Jacqueline Jaguit Madenfrost."

6.

The Trust admits the allegations of Paragraph 6. of the Complaint.

7.

The Trust is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 7. of the Complaint. The Trust believes that Ms. Nahmens may continue to reside in Venezuela.

8.

The Trust admits the allegations of Paragraph 8. of the Complaint, except that the Trust denies that two or more claimants are entitled to the money.

9.

The Trust admits the allegations of Paragraph 9. of the Complaint.

10.

The Trust admits the allegations of Paragraph 10. of the Complaint.

11.

The Trust admits the allegations of Paragraph 11. of the Complaint.

12.

The Trust admits the allegations of Paragraph 12. of the Complaint.

13.

The Trust admits the allegations of Paragraph 13. of the Complaint.

14.

The Trust admits the allegations of Paragraph 14. of the Complaint.

15.

The Trust admits the allegations of Paragraph 15. of the Complaint.

16.

The Trust admits the allegations of Paragraph 16. of the Complaint.

17.

The Trust admits the allegations of Paragraph 17. of the Complaint.

18.

The Trust admits the allegations of Paragraph 18. of the Complaint.

19.

The Trust admits the allegations of Paragraph 19. of the Complaint.

20.

The Trust admits the allegations of Paragraph 20. of the Complaint.

21.

The Trust admits the allegations of Paragraph 21. of the Complaint.

22.

The Trust admits the allegations of Paragraph 22. of the Complaint, with the exception of the spelling of Jacqueline's name; the correct spelling is "Jacqueline Jaguit Madenfrost."

23.

The Trust admits the allegations of Paragraph 23. of the Complaint.

24.

The Trust is without knowledge or information sufficient to form a belief as to whether the referenced report was made to National Life as alleged in Paragraph 24. of the Complaint.  However, the Trust denies that Madenfrost and his second wife had any children.  The Trust denies that Madenfrost fathered any children other than Jacqueline Jaguit Madenfrost and Monica Elka Madenfrost.

25.

The Trust is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 25. of the Complaint.

26.

The Trust is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 26. of the Complaint.

27.

The Trust admits the allegations of Paragraph 27. of the Complaint, but denies that Victoria Alembik-Eisner received the inquiry before 2006.

28.

The Trust admits the allegations of Paragraph 28. of the Complaint.

29.

The Trust admits the allegations of Paragraph 29. of the Complaint.

30.

The Trust admits the allegations of Paragraph 30. of the Complaint.

31.

The Trust admits the allegations of Paragraph 31. of the Complaint.

32.

The Trust is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 32. of the Complaint.

33.

The Trust is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 33. of the Complaint.

34.

The Trust admits the allegations of Paragraph 34. of the Complaint.

35.

The Trust admits the allegations of Paragraph 35. of the Complaint, but denies that National Life is insulated from legal liability by virtue of the identified terms.

36.

The Trust denies generally the allegations in Paragraph 36. of the Complaint, but admits that Madenfrost transferred ownership of the Policy to the Trust, and admits that Victoria Alembik-Eisner informed National Life of Madenfrost's incapacity.

37.

The Trust denies the allegations in Paragraph 37. of the Complaint in that there is no room for debate as to the *in*validity of the attempted revocation.

38.

The Trust denies the allegations in Paragraph 38. of the Complaint in that National Life's concern about multiple liability is unfounded on its face.

39.

The Trust is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 39. of the Complaint and denies that National Life is entitled to the relief for which it prays.

**Rule 19(c) Notice**

40.

In accordance with FED. R. CIV. P. 19(c), the Trust identifies Amasilis Del

Carmen Nahmens ("Nahmens") as a potential defendant in interpleader in whose absence complete relief may not be accorded among the parties to this action if the demand for interpleader proceeds. Nahmens has no claim to the insurance policy and the Trust is the only rightful beneficiary of the insurance policy. Nahmens was last known to be residing in Caracas, Venezuela. Her current whereabouts are unknown. In equity and good conscience, this action should proceed *only* between the Trust and National Life in the event of Nahmens's non-joinder into the interpleader action.

## DEFENSES

### FIRST DEFENSE

National Life's Complaint fails to state a claim upon which relief can be granted.

### SECOND DEFENSE

National Life's claims are barred because National Life did not act in good faith and has unclean hands.

### THIRD DEFENSE

National Life's claims are barred since it breached its contract to insure the life of Abraham Henry Madenfrost.

**FOURTH DEFENSE**

National Life's claim for interpleader is barred because the amount paid into Court is not the full amount of National Life's liability due to bad faith penalties and interest.

**FIFTH DEFENSE**

National Life's claim for interpleader is barred because there is no dispute between the identified defendants in interpleader as to the amounts for which National Life is liable to them.

WHEREFORE, having fully answered National Life's Complaint, the Trust requests that National Life's Complaint be dismissed, that judgment be entered for the Trust against National Life, and for such other and further relief as the Court deems just and proper.

# COUNTERCLAIM

As its Counterclaim against National Life, the Trust alleges as follows:

1.

Defendant in Counterclaim National Life has submitted to the jurisdiction and venue of this Court by filing the instant action.

2.

This court has jurisdiction over this Counterclaim under 28 U.S.C. § 1332 in that it involves a controversy that exceeds $75,000 exclusive of interest and costs and that the parties are completely diverse.

3.

Alternatively, this court has jurisdiction over this counterclaim under 28 U.S.C. § 2201 in that this is a case of actual controversy within this court's jurisdiction and the Trust seeks a declaration of its legal rights with respect to Defendant in Counterclaim National Life.

**FIRST COUNT**
**(Breach of Contract)**

4.

On or about January 7, 1990, Abraham Henry Madenfrost ("Madenfrost") entered into a contract of insurance on his life with National Life.

5.

Under the contract of insurance, National Life issued Policy No. 2132538 ("the Policy"), a whole life insurance policy in the face amount of $250,000, on or about January 7, 1990.

-10-

6.

Under the contract of insurance, National Life agreed to pay the benefits of the Policy to the identified beneficiary in the case of the death of Abraham Henry Madenfrost.

7.

At the time of issuance of the Policy, Madenfrost was the owner of the Policy.

8.

The Policy states in pertinent part:

*Change of Beneficiary. If the Owner has the right, a new Beneficiary may be named from time to time during the life of the Insured by filing at [National Life's] Home Office written notice in such form as [National Life] may require.*

9.

On May 17, 1990, Madenfrost created the Trust by executing a document titled "Revocable Trust" (the "Trust Instrument," annexed to the Complaint by National Life as Exhibit "2.").

10.

The Trust Instrument provided that Victoria M. Alembik and Michael D. Alembik would be co-trustees of the Trust.

11.

In <u>Item I</u> of the Trust Instrument, Madenfrost reserved the right:

*to amend or revoke this trust in whole or in part at any time and from time to time during my lifetime, so long as I am physically and mentally capable of managing my affairs (as determined by the Trustee **in its sole discretion**, and it shall not be liable for any such decision if made in good faith)....*[1]

12.

On May 21, 1990, Madenfrost assigned all of his ownership interest in the Policy to the Trust with a document titled "Absolute Assignment," and directed that the Trust be the beneficiary of the Policy.

13.

At the time that Madenfrost created the trust he was married to Doris Gicherman Madenfrost ("Gicherman").

14.

At the time that Madenfrost created the trust he had fathered two children with Gicherman, to wit: Monica Elka Madenfrost (DOB: ███/79) and Jacqueline Jaguit Madenfrost (DOB: ███/87).

---

[1] Emphasis supplied.

-12-

15.

On February 5, 1993, co-trustee Michael D. Alembik died.

16.

No replacement co-trustee was appointed.  Victoria M. Alembik, n/k/a

Victoria Alembik-Eisner, remained as the sole trustee of the Trust.

17.

On November 4, 1993, Madenfrost and Gicherman were divorced in

Caracas, Venezuela.

18.

In 1996, Madenfrost married Amasilis Del Carmen Gonzalez Nahmens

("Nahmens") in Venezuela.

19.

No children resulted from the marriage between Madenfrost and Nahmens.

20.

During his life, Madenfrost fathered no children other than Monica Elka

Madenfrost and Jacqueline Jaguit Madenfrost.  See Exhibits "A" (Affidavit of

Monica Elka Madenfrost) and "B" (Affidavit of Jacqueline Jaguit Madenfrost),

incorporated herein by this reference.

21.

Madenfrost adopted no other children during his lifetime.

22.

Madenfrost has been married only to Gicherman or to Nahmens, and to no other person.

23.

On information and belief, on or about October 28, 2002, Madenfrost executed a document titled "Notice of Revocation of Revocable Trust," in which he directed the co-trustees [*sic*.] of the trust "to liquidate or to transfer the trust assets according to any further directions given to them by me."

24.

When informed of the purported revocation—four years later, and after Madenfrost's death—trustee Victoria Alembik-Eisner declined to validate the attempted revocation of the Trust.

25.

The trustee's decision not to validate the attempted revocation was based upon her determination that Madenfrost was not physically or mentally capable of

managing his affairs at the time of the attempted revocation.  This decision was made consistently with her absolute discretion to make such determination under Item I of the Trust Instrument.

26.

Notwithstanding his apparent declaration of revocation of the Trust of October 28, 2002, Madenfrost neither declared nor provided any further instruction to the trustee in this regard.  The trustee did not receive such declaration until after Madenfrost's death in 2006.

27.

Madenfrost never provided written notice to National Life of the identity of the putative "new beneficiary" as required by the express terms of the Policy.[2]

28.

Any attempt by Madenfrost to change the beneficiary would have been void *ab initio* since Madenfrost had assigned away all of his right, title and interest in the Trust in 1990—with the exception of a reversionary right that was expressly

---

[2] *See Lake v. Young Harris Alumni Foundation*, 283 Ga. App. 409 (2007) (insurer's regulations defining methods by which policyholder may change beneficiary forbid any such change to be exercised in any other way).

-15-

conditioned on the discretionary approval of the trustee(s).

29.

On November 23, 2004, Madenfrost and Nahmens were divorced in Caracas, Venezuela.  Madenfrost never remarried.

30.

On April 2, 2006, Madenfrost died of a heart attack in Caracas, Venezuela.

31.

On September 5, 2006, Victoria Alembik-Eisner made a formal written demand upon the Policy in her capacity as sole trustee of the Trust—the owner and sole beneficiary of the Policy.  See Exhibit "C" annexed hereto and incorporated herein by this reference.

32.

With her demand Victoria Alembik-Eisner provided, or had already provided, National Life all documentation and information necessary for National Life to confirm Madenfrost's family status and all other information relevant to the claim under the Policy.

33.

All conditions precedent to National Life's obligation to pay death benefits

under the Policy had obtained at the time that the demand for payment of benefits was made by the Trust.

34.

More than sixty days have elapsed since the Trust made the written demand upon the Policy.

35.

National Life has breached its obligation to pay under the Policy by refusing to pay the amount due under the Policy, a sum no less than $273,535.22.

36.

National Life is liable to the Trust for the full amount due under the Policy.

## SECOND COUNT
### (Interest on Life Insurance Policy)

37.

The Trust incorporates Paragraphs 1. through 36. of its Counterclaim and makes such paragraphs a part of this Count.

38.

Defendant in Counterclaim National Life is liable to the Trust for interest on the death benefits under the Policy calculated beginning October 5, 2006, in accordance with O.C.G.A. § 33-25-10.

## THIRD COUNT
### (Bad Faith Denial of Claim)

39.

The Trust incorporates Paragraphs 1. through 38. of its Counterclaim and makes such paragraphs a part of this Count.

40.

Because <u>Item I</u> of the Trust Instrument vests absolute authority in the trustee to veto Madenfrost's attempted revocation of the trust, and thereby transfer ownership of or the right to select the beneficiary of the Policy, National Life's refusal to pay the record beneficiary under the policy demonstrates that it has not been acting in good faith.

41.

As its excuse for refusing to pay under the Policy, and despite having been presented authenticated documentation to the contrary, National Life claims that, since Madenfrost *may have* fathered children other than Monica Elka Madenfrost and Jacqueline Jaguit Madenfrost, it is therefore prevented from determining the rightful owner(s) and beneficiary(ies) of the Policy.

42.

However, because it has been presented with documented proof as to

Madenfrost's only potential heirs and/or beneficiaries (Monica Elka Madenfrost and Jacqueline Jaguit Madenfrost) National Life's reason for its refusal to pay under the Policy is further confirmation that it has not been acting in good faith.

43.

For the foregoing reasons, National Life's refusal to pay the loss to the Trust as record beneficiary was made in bad faith.

44.

As a result of its bad faith denial of claim, National Life is liable to pay the Trust, in addition to the loss, 50% of the liability for the loss, and all reasonable attorneys' fees and expenses of litigation for the prosecution of this action against National Life under O.C.G.A. §33-4-6.

**FOURTH COUNT**
**(Declaratory Judgment)**

45.

The Trust incorporates Paragraphs 1. through 44. of its Counterclaim and makes such paragraphs a part of this Count.

46.

There is now existing between the Trust and National Life an actual, justiciable controversy in respect to which the Trust is entitled to have a

declaration of its rights and further relief.

47.

The Trust is entitled to a declaratory judgment determining that the Trust is the sole owner and beneficiary of the Policy to whom all benefits are immediately payable.

WHEREFORE, the Trust requests that:

(a)    the court determine the rights of the Trust under the terms of the Policy;

(b)    the court enter a declaratory judgment determining that the Trust is the sole owner and beneficiary of the Policy;

(c)    the court determine that this is *not* a proper case for interpleader and therefore that National Life is *not* entitled to compel the named defendants in interpleader to litigate their claims to the sum of money in question;

(d)    *if* the court determines this *is* a proper case for interpleader, that the court allow this action to proceed despite the non-joinder of any other named defendant in interpleader;

(e)    *if* the court determines this *is* a proper case for interpleader, the court award all interpleaded funds and all accrued interest to the Trust;

-20-

(f)    the Trust have judgment against National Life for the full life benefit

      payable under the Policy;

(g)    the Trust have judgment against National Life for interest in accordance

      with O.C.G.A. § 33-25-10;

(h)    the Trust have judgment against National Life for a bad faith penalty in

      the amount of 50% of National Life's liability or $5,000, whichever is

      greater;

(i)    the Trust be awarded reasonable attorney's fees;

(j)    the Trust be awarded costs incurred in this action;

(k)    the court grant such other and further relief as is equitable, just and

      proper in the premises.

                RICHARD S. ALEMBIK, PC


By:   /s/ Richard S. Alembik_____
       Richard S. Alembik
       Georgia State Bar No. 008770
       Attorney for Victoria Alembik-Eisner,
       Trustee of the Abraham Henry Madenfrost
       Revocable Trust, Defendant in Interpleader,
       Plaintiff in Counterclaim

315 W. Ponce de Leon Ave.
Ste. 250
Decatur, GA 30030-5100
(404) 373-0205
(404)795-8999 (fax)
rick@alembik.com

## CERTIFICATE OF SERVICE

I hereby certify that on April 15, 2007, I presented the foregoing Answer and

Counterclaim to the Clerk of Court for filing and uploading to the CM/ECF system

that will send notice of electronic filing to the following opposing counsel:

**H. Sanders Carter, Jr., Esq.**
**Aaron E. Pohlman, Esq.**
**Carter & Ansley**
**2300 Atlantic Center Plaza**
**1180 W. Peachtree Street**
**Suite 2300**
**Atlanta, GA   30309-3482**



RICHARD S. ALEMBIK, PC


By:     /s/ Richard S. Alembik
        Richard S. Alembik
        Georgia State Bar No. 008770
        Attorney for Victoria Alembik-Eisner,
        Trustee of the Abraham Henry Madenfrost
        Revocable Trust, Defendant in Interpleader,
        Plaintiff in Counterclaim

315 W. Ponce de Leon Ave.
Ste. 250
Decatur, GA 30030-5100
(404) 373-0205
(404)795-8999 (fax)
rick@alembik.com